UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE ALYCE PIEROTTI, | Case No.16-cv-02936-HSG |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFF'S ADMINISTRATIVE MOTION TO AUGMENT RECORD** |
| BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA, | |
| Defendant. | Re: Dkt. No. 59, 78 |

Pending before the Court is a motion for partial summary judgment filed by the Board of Regents of the University of California ("Defendant"). Dkt. No. 59. For the reasons set forth below, the Court **GRANTS** Defendant's motion.

## I.  BACKGROUND

Defendant seeks summary judgment on three of Plaintiff Diane Pierotti's[1] causes of action: (1) sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII"); (2) sexual harassment under California's Fair Employment and Housing Act, Cal. Gov't Code §§ 12940, *et seq.* ("FEHA"); and (3) retaliation under Cal. Lab. Code § 1102.5.

### A.  Facts[2]

Plaintiff worked for Defendant as a senior administrator at the University of California, Berkeley ("UC Berkeley"). Dkt. No. 59-2 (Declaration of Laura Mays or "Mays Decl.") ¶ 2; Pierotti Decl. ¶ 2.[3]

---

[1] At some point before April 30, 2013, Plaintiff legally changed her last name from Leite to Pierotti. *See* Dkt. No. 66-1 (Declaration of Diane Pierotti, or "Pierotti Decl."), Ex. 1, at 8 (ECF pagination). Plaintiff's former last name is frequently used throughout the record.

[2] Except where noted, all facts listed in this section are either undisputed or reflect this Court's drawing all reasonable inferences in Plaintiff's favor.

[3] The Pierotti Declaration is located at Docket Number 66-1, ECF pages 1 through 5.

### 1. Alleged Whistleblowing by Plaintiff and Retaliation by Defendant

In 2011, Defendant began investigating Plaintiff after receiving "a whistleblower complaint alleging that Plaintiff had engaged in serious misconduct." Mays Decl. ¶ 3. Defendant subsequently "concluded that Plaintiff had violated University policy by engaging in a lengthy sexual relationship with a subordinate and by abusing her position with the University to provide that subordinate promotions, pay raises and bonuses." *Id.* The investigative reports also found that "Plaintiff failed to report the relationship or to resolve the conflict of interest that it created, as policy required." *Id.* Defendant cites this misconduct as the reason why Plaintiff was ultimately terminated, effective May 8, 2012. *See id.* ¶ 4; *id.*, Ex. A. (termination letter, dated May 4, 2012, stating that Plaintiff was terminated "for loss of confidence in you by the faculty and staff as described in the Notice of Intent to Terminate letter dated March 23, 2012").[4]

Plaintiff's account of why she was terminated is different. Plaintiff states that on April 10, 2010, she learned of a conflict of interest regarding Defendant's payments to an outside vendor owned by one of its employees who worked in the university's Radio Astronomy Laboratory ("RAL"). Pierotti Decl. ¶ 12; *id.*, Ex. 5, at 1. Plaintiff verified that Defendant was purchasing equipment directly from the vendor and paying the vendor "to do work for [the university] by funneling those funds through a third party." Pierotti Decl. ¶ 12. Believing this to violate California law, Plaintiff "reported these findings of alleged illegal activity to [Vice Chancellor] Graham Fleming and Associate Chancellor Linda Williams." *Id.* Neither responded to Plaintiff's complaint. *Id.* Later, in a letter written after her termination, Plaintiff described what happened after she made this whistleblower complaint:

> Immediately following my raising of the conflict of interest issue regarding the [vendor] and reporting the whistleblower complaint, the [RAL faculty and "broader Astronomy community"] became openly hostile both to me and to the staff reporting to me who were working with the Astronomy faculty. I made a complaint regarding the hostility. This complaint was investigated by human resources and found to be significant. The staff were removed from the Astronomy location and other actions were taken.
>
> These same faculty then retaliated against me by signing a petition

---

[4] The Notice of Intent to Terminate letter is not in the record.

> and calling for more severe action to be taken against me in regards to a conflict of interest in which I was involved and that had been resolved. These faculty members' responses were viewed as a lack of confidence and were the basis on which I was terminated.

*Id.*, Ex. 5, at 4 (letter dated August 15, 2012 from Plaintiff to Daniel Dooley, a senior vice president of the university).

After filing her whistleblower complaint regarding Defendant's payments to the vendor, Plaintiff also filed at least two grievances before her termination became effective on May 8, 2012. On February 8, 2012, Plaintiff filed a grievance which complained, in part, about the university's "carrying out a biased investigation which failed to treat the whistleblower complaint as required by police." *Id.*, Ex. 3, at 17 (ECF pagination). And, in a grievance that appears to have been dated April 11, 2012, Plaintiff claimed, *inter alia*, that unspecified faculty members created an online petition, which was the basis of her termination. *Id.*, Ex. 10, at 66 (ECF pagination). After her termination, Plaintiff filed two additional grievances: one on May 24, 2012, regarding the lack of communication since her "submission of a grievance and appeal," *id.*, Ex. 11, at 69 (ECF pagination); and one on May 25, 2012, claiming wrongful termination and violations of her rights under the university's "policy, procedures, due process rights, and privacy protections," *id.*, Ex. 12, at 73 (ECF pagination). Plaintiff also submitted letters to senior university leadership, describing her whistleblower complaint and the retaliation that followed. *See id.*, Exs. 4 (letter to senior vice president of compliance and audit Sheryl Vacca), 5 (letter to senior vice president Dooley).

On November 2, 2012, Dooley wrote to Plaintiff, finding that Plaintiff's complaint regarding the university's payments to the vendor owned by an employee did not constitute a "protected disclosure." *Id.*, Ex. 6. Accordingly, the university "closed [its] file regarding [her] complaints." *Id.*

### 2. Alleged Sexual Harassment by Plaintiff's Supervisor

Nearly a decade before Plaintiff made her whistleblower complaint, in 2001, Plaintiff began reporting to Fleming, the vice chancellor. Pierotti Decl. ¶ 2. In the three years preceding Plaintiff's termination in May 2012, Fleming "engaged in pervasive, offensive, and unwanted sexual conduct" toward Plaintiff. *Id.* ¶ 3. This included instances of Fleming's

> grabbing and squeezing my breasts while no one was looking; entering my hotel room against my will on a business trip; drinking excessively and making several lewd comments including that "he wanted to sleep with" me, that I "had the most beautiful breasts," and that once he only left me alone after I let him into [my] hotel room so he could "rub [my] feet and cuddle"; once entering my hotel room after multiple refusals, massaging my feet with lotion, and laying down next to me in such a way that I could feel his erection; and coming up behind me at work, lifting up my hair, and kissing me on the back of my neck.

*Id.* In October 2011, an employee of Defendant reported to the university that Plaintiff "was being subjected to ongoing sexual harassment by Fleming." *Id.* ¶ 4. Then, in March 2012, another employee reported "that Fleming was having an affair" with Plaintiff. *Id.* ¶ 5. In April 2013, Plaintiff herself stated in a deposition (unrelated to this case) that Fleming had sexually harassed her while she was an employee. *See id.* ¶ 6; *see also id.*, Ex. 1. Moreover, by the end of 2013—more than a year and a half after Plaintiff was terminated in May 2012—several other employees of Defendant "were aware" of her sexual harassment claims. *See id.* ¶¶ 10-11.

It was not until the following year, however, that Defendant followed up on any allegations of sexual harassment involving Fleming. *See id.* ¶ 7. On April 15, 2014, Defendant retained an independent investigator to look into Plaintiff's sexual harassment claims. *Id.* The investigator's findings, dated October 24, 2014, "confirmed a slew of incidents and behaviors by Fleming throughout his time working with [Plaintiff] that constituted unwanted sexual conduct" toward her. *Id.* ¶ 8; *see also* Dkt. No. 44 (First Amended Complaint), Ex. 1 (redacted investigator's report). On December 9, 2014, Defendant communicated to Plaintiff the investigator's conclusion "that it was more likely than not that Vice Chancellor Fleming subjected you to sexual harassment in violation of the University's Policy on Sexual Harassment during your employment at the Berkeley campus." Dkt. No. 66-1 at 15 (ECF pagination). Defendant "concur[red] with and . . . therefore adopted" those findings. *Id.*

## B. Procedural Posture

### 1. Administrative Proceedings

#### a. Intake Questionnaire for the EEOC

On December 12, 2012, Plaintiff filed an Intake Questionnaire with the U.S. Equal Employment Opportunity Commission ("EEOC"). *See* Dkt. No. 59-3, Ex. 1 ("Questionnaire"). In

her Questionnaire, she checked a box representing that she "believe[d] that [she] was discriminated against by her" employer. *Id.* at 1. In response to a question asking her to specify the "reason (basis) for your claim of employment discrimination," Plaintiff checked boxes for "Sex" and "Age," and left the other boxes blank. *Id.* at 2. Plaintiff described the discriminatory actions taken against her as "demotion, salary decrease, [and] responsibility restrictions," which occurred on March 1, 2012, and her discharge, which occurred on May 8, 2012. *Id.* She deemed Fleming to be the responsible party. *Id.* In a space following a question about why she believed these actions were discriminatory, Plaintiff wrote: "[e]mployees of different gender and younger in similar situations have not suffered such actions. Denied due process rights and protections given others." *Id.* When asked what reasons were given to her for the acts she considered to be discriminatory, Plaintiff wrote: "Fleming told me actions taken March 1, 2012 were solely to avoid publicity and were increased to do so. Actions taken May 8 he said were as a result of a change in business needs." *Id.*

Plaintiff stated that she was represented by Jane Brunner at Siegel and Yee at the time she submitted the Questionnaire. *Id.* at 4.[5] She also indicated, by checking "Box 2," that she wanted to file a charge of discrimination, and "authorize[d] the EEOC to look into the discrimination [she] described above." *See id.*

### b.   EEOC Charge of Discrimination and Dismissal

On July 29, 2013, Plaintiff dual-filed a Charge of Discrimination with the EEOC and the California Department of Fair Employment & Housing ("DFEH"). Dkt. No. 59-3, Ex. 2 ("Charge").[6] As in her Questionnaire, Plaintiff marked checkboxes representing that she was alleging discrimination based on her sex and her age. *See id.* The following passage comprises the entirety of the narrative portion of Plaintiff's charge (in the box labeled "THE PARTICULARS ARE"):

> I was hired on or about October 11, 1982 as a Clerk. My last job title was Director.

---

[5] Page 3 is missing from the version of the Questionnaire in the record.

[6] Because the Charge is only one page long, the Court will not provide formal citations throughout this order. Any reference to the Charge is to Exhibit 2 to Docket Number 59-3.

On or about March 1, 2012, I was demoted, which included a decrease in salary and responsibilities, because there was a complaint about sexual harassment against me. Other male and younger employees did not suffer the same actions as I did. Graham Fleming, Respondent's Vice Chancellor for Research, told me this was done to avoid publicity.

On or about May 8, 2012, after Respondent provided a newspaper report with private information and faculty and staff complained about me, I was terminated. Other male and younger employees did not suffer the same actions as I did. Fleming told me I was terminated as a result of a change in business needs.

I believe I was discriminated against based on my gender and age when Respondent failed to investigate my whistleblower complaint regarding a financial conflict of interest and intimidation by a faculty member, released my personal information and did not follow the grievance procedures, while they investigated complaints, did not release personal information, and followed the grievance procedures for male employees of Respondent.

I believe I have been discriminated against because of my age, 47, and my sex, female, in violation of the Age Discrimination in Employment Act of 1967, as amended, and Title VII of the Civil Rights Act of 1964, as amended, respectively.

*Id.* Plaintiff noted that the latest date discrimination took place was May 8, 2012, the date of her termination. *Id.*

On August 6, 2013, the DFEH issued to Plaintiff a notice that her Charge was being dual-filed with the DFEH and the EEOC. Dkt. No. 59-3, Ex. 3. Defendant received the same notice that same day, along with a copy of the Charge. Dkt. No. 59-1 (Declaration of Anita Raman, or "Raman Decl."), Ex. A., at 5 (ECF pagination).

At some point in 2013, "[w]hile the EEOC investigation was still ongoing," Plaintiff "called the EEOC to ask if [she] had to file a new claim with them to cover any additional actions that had occurred since the time [she] initiated [her] claims in December 2012, including sexual harassment." Pierotti Decl. ¶ 24. Plaintiff represents under oath that "[t]he EEOC representative told [her] that [she] did not have to do anything because any new actions that occurred since then, including sexual harassment, were covered by [her] original filing." *Id.*

On March 31, 2014, Defendant filed a Statement of Position in opposition to Plaintiff's Charge. *See* Raman Decl., Ex. B. On March 4, 2016, the EEOC dismissed Plaintiff's Charge, finding that it was "unable to conclude that the information obtained [in its investigation]

6

establishes violation of the statutes." Dkt. No. 59-3, Ex. 4. The dismissal stated that Plaintiff could file a lawsuit within 90 days of her receipt of the dismissal notice. *Id.* Plaintiff acknowledges that the EEOC's investigation closed on March 4, 2016. Pierotti Decl. ¶ 20.

### 2. Proceedings in This Case

On June 1, 2016, Plaintiff, proceeding pro se, filed the initial Complaint in this case. Dkt. No. 1. She alleged three causes of action: discrimination on the basis of gender under both Title VII and FEHA, and retaliation under Cal. Lab. Code § 1102.5. *See id.* On January 26, 2017, Plaintiff's counsel entered his appearance. Dkt. No. 32. Plaintiff subsequently sought leave to amend the Complaint, Dkt. No. 38, which the Court granted on August 22, 2017, Dkt. No. 43.

Plaintiff filed the operative First Amended Complaint on August 29, 2017. Dkt. No. 44 ("FAC"). Defendant moved for partial summary judgment on December 28, 2017. Dkt. No. 59 ("Mot."). Plaintiff filed her opposition on January 11, 2018, Dkt. No. 66 ("Opp."), and Defendant replied on January 18, 2018, Dkt. No. 69 ("Reply"). At the March 22, 2018 hearing on the motion, the Court directed the parties to submit supplemental briefing addressing the issue of whether the Charge that Plaintiff dual-filed with the EEOC and DFEH was timely. *See* Dkt. No. 80 at 2. The parties submitted their briefs on March 29, 2018. *See* Dkt. No. 84 (Plaintiff's brief); Dkt. No. 83 (Defendant's brief).

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). If a court

finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

With respect to summary judgment procedure, the moving party always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102-03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the courts is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts must enter summary judgment in favor of the movant. *Celotex*, 477 U.S. at 323.

## III. DISCUSSION

Defendant seeks summary judgment as to Plaintiff's claims of retaliation under the California Labor Code and her sexual harassment claims under both Title VII and FEHA. The Court considers each argument in turn.

8

**A.      Plaintiff's Retaliation Claim Is Time-Barred and Cannot Be Equitably Tolled.**

Defendant contends that Plaintiff's retaliation claim is barred by the statute of limitations. *See* Mot. at 6-7.  Plaintiff counters that her claim is timely because the Charge "specifically refers to the factual circumstances relating to [her] whistleblower retaliation claims," and argues in the alternative that the limitations period should be equitably tolled.  *See* Opp. at 13-14 (emphasis removed).

**1.      Plaintiff's retaliation claim under section 1102.5 is time-barred.**

Under the California Labor Code, an employer is prohibited from retaliating against an employee for disclosing information to a person or entity "who has the authority to investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation" of law.  *See* Cal. Lab. Code § 1102.5(b). Actions under section 1102.5 generally "must be brought within three years."  *See Minor v. FedEx Office & Print Servs.*, 182 F. Supp. 3d 966, 988 (N.D. Cal. 2016) (citation omitted); *see also* Cal. Civ. Proc. Code § 338(a) (establishing three-year limitations period for "[a]n action upon a liability created by statute, other than a penalty or forfeiture").  The latest date on which a retaliation claim can accrue is the date of the employee's termination.  *See Minor*, 182 F. Supp. 3d at 989 (citations omitted).

Here, the latest that Plaintiff's retaliation claim could have accrued is the date of her termination: May 8, 2012.  *See* Mays Decl. ¶ 4; *id.*, Ex. A.  As a result, the statute of limitations ran three years later, on May 8, 2015—more than a year before Plaintiff filed the initial Complaint on June 1, 2016, and more than two years before she filed the FAC on August 29, 2017.  Her retaliation claim is therefore barred by the statute of limitations.  Moreover, Plaintiff's argument to the contrary is not persuasive.  She disputes neither the date she was terminated nor the dates on which she filed complaints in this action.  Instead, she argues that her claim under section 1102.5 is not time-barred because the Charge "*specifically refer[red]* to the factual circumstances" relating to the retaliation claim, and thus "encompass[ed]" that claim.  *See* Opp. at 13-14 (original emphasis).  Plaintiff's argument, however, is wholly conclusory and fails to provide legal support for the proposition that merely mentioning the factual nexus of a civil claim in an administrative

charge is sufficient for purposes of section 338(a) of the California Civil Procedure Code. *See Jarrett v. N. Am. Rockwell Corp., L.A. Div.*, 433 F. Supp. 275, 277 (C.D. Cal. 1977) ("The applicable state statute of limitations is not tolled merely because the plaintiff filed a charge with the EEOC, since, inter alia, such tolling principle would totally eliminate any overall period of limitations in such cases.") (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975) and *Dillon v. Bd. of Pension Comm'rs*, 18 Cal. 2d 427 (1941)).

### 2. There is no triable issue of fact as to whether Plaintiff's retaliation claim was equitably tolled.

Plaintiff next contends that the doctrine of equitable tolling preserves her retaliation claim. *See* Opp. at 14-15. Defendant counters that "Plaintiff has proffered no legitimate reason for failing to timely file her lawsuit alleging the" retaliation violation. *See* Reply at 1.

### a. California's equitable tolling doctrine requires a "fact-intensive," "practical" inquiry.

The doctrine of equitable tolling is "designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of plaintiff's claims—has been satisfied." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 99 (2008) (citation omitted). California law sets forth a "definitive three-pronged test for invocation of" the doctrine. *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137 (9th Cir. 2001) (quoting *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 924 (1983)). Equitable "tolling is appropriate where the record shows '(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim.'" *Id.* at 1137-38 (citation omitted).

The first prong requires the plaintiff's first claim to be filed within the statutory period, and to "alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim." *Id.* at 1138 (citation and internal quotation marks omitted). The second prong requires the two claims to "be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." *Id.* (citation

omitted).  The third prong, good faith and reasonable conduct, "is less clearly defined," but a court can look to whether a plaintiff delayed in filing her second claim to determine reasonableness, or "deliberately misled the defendant into believing the second claim would not be filed" to determine good faith.  *See Collier*, 142 Cal. App. 3d at 925.  All three prongs must be satisfied.  *See Aguilera v. Heiman*, 174 Cal. App. 4th 590, 598 (2009).

The question of equitable tolling in California is "fact-intensive," and "each of the three factors in California's test . . . requires a *practical* inquiry."  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993) (original emphasis).

### b.      The undisputed facts show that Plaintiff does not satisfy the requirements for equitable tolling as a matter of law.

With respect to the first prong of the equitable tolling inquiry, Plaintiff identifies the EEOC Charge as her "first claim."  *See* Opp. at 14 ("Here, Pierotti gave the UC timely notice by timely filing her EEOC Charge.").  She contends that because she filed the Charge on July 29, 2013— well within the three-year limitations period for claims under section 1102.5—her first claim was timely filed.  *See id.*  But Plaintiff fails to address the requirement that the first claim "alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim."  *See Daviton*, 241 F.3d at 1138.

Plaintiff did not expressly or indirectly allege retaliation in the Charge, or describe an instance in which she disclosed information and was subsequently punished for it.  *See* Cal. Lab. Code § 1102.5(b).  Instead, she stated that she was demoted because of a sexual harassment complaint against her, and later terminated in response to another unspecified complaint.  Plaintiff's Questionnaire also did not mention retaliation.  While the Charge states that Defendant failed to investigate a whistleblower complaint Plaintiff filed, in addition to taking various other adverse actions against her, even read in the light most favorable to Plaintiff, the Charge suggested only that these actions were the products of Defendant's alleged *discrimination*, not a form of retaliation.

In the alternative, Plaintiff appears to suggest an overly broad interpretation of what constitutes a "first claim" for purposes of equitable tolling.  After contending that her Charge was

11

her first claim, she further argues that "Defendant was on notice of and able to gather evidence relating to [Plaintiff's] whistleblower claim, evidenced not only by its rebuttal of that claim in its position statement, but numerous pieces of evidence." *See* Opp. at 14. The "pieces of evidence" described are grievances Plaintiff filed with Defendant dating back to February 8, 2012. *Id.* In other words, Plaintiff effectively seeks an interpretation of California's equitable tolling doctrine in which her "first claim"—the Charge—implicitly incorporates every arguably related grievance that came before it, regardless of whether the Charge even mentions the issues described in those grievances. Plaintiff cites no authority supporting such an application of equitable tolling, which lacks a limiting principle and would altogether negate the purpose of the doctrine: ensuring a defendant has "timely notice" of a second claim based on the *content* of the first claim. *See McDonald*, 45 Cal. 4th at 99.

The Court thus finds, based on the undisputed evidence proffered by the parties and drawing all reasonable inferences in Plaintiff's favor, that Plaintiff's equitable tolling argument fails as a matter of law because she did not provide timely notice of the retaliation claim. Defendant's motion for summary judgment with respect to Plaintiff's retaliation claim is therefore granted.

**B.** **Plaintiff Failed to Exhaust Her Sexual Harassment Claims and Is Not Entitled To Equitable Relief to Preserve Those Claims.**

Defendant next argues that Plaintiff's sexual harassment claims under Title VII and FEHA are barred by her failure to exhaust administrative remedies. *See* Mot. at 7-12. Plaintiff counters that even if she failed to exhaust, her claims are preserved by the doctrine of equitable tolling. *See* Opp. at 12. The Court finds that Plaintiff failed to exhaust administrative remedies, and has not shown that she is entitled to equitable relief.

**1.** **Plaintiff timely filed an administrative charge with respect to her Title VII claim, and the Court assumes without deciding that she timely filed a charge for her FEHA claim.**

**a.** **To establish federal jurisdiction over Title VII and FEHA claims, plaintiffs must first file an administrative charge with the relevant agency.**

For a plaintiff to establish a court's subject matter jurisdiction over her Title VII claim, she

must first "exhaust her administrative remedies by filing a timely charge with the EEOC . . . thereby affording the agency an opportunity to investigate the charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (citing 42 U.S.C. § 2000e-5(b)). For a Title VII charge to be timely, a plaintiff must file it with the EEOC within 180 days "after the alleged unlawful employment practice occurred." *See* 42 U.S.C. § 2000e-5(e)(1). An exception to this rule applies where a plaintiff "has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice," in which case the deadline to file a charge with the EEOC extends to 300 days. *See id.*; *see also Kennedy v. Columbus Mfg., Inc.*, No. 17-cv-03379-EMC, 2017 WL 4680079, at *2 (N.D. Cal. Oct. 18, 2017) (citation omitted). In California, because the EEOC and DFEH have a work-sharing agreement, "a filing with one agency is considered to be constructively filed with the other." *See Dornell v. City of San Mateo*, 19 F. Supp. 3d 900, 905 (N.D. Cal. 2013) (citing *Equal Opportunity Emp't Comm'n v. Dinuba Med. Clinic*, 222 F.3d 580, 585 (9th Cir. 2000) and *Paige v. State of Cal.*, 102 F.3d 1035, 1041 (9th Cir. 1996)). As a result, filing a charge with the EEOC has the effect of simultaneously filing it with DFEH, "trigger[ing] the 300-day charge period" as a general rule. *See Kennedy*, 2017 WL 4680079, at *4. Moreover, an EEOC intake questionnaire qualifies as a charge for exhaustion purposes if it (1) "provide[s] the information required by the regulation, *i.e.*, an allegation and the name of the charged party"; and (2) can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *See id.* at *2 (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)) (internal quotation marks omitted).

For claims under FEHA, plaintiffs are generally required to file a charge with DFEH within one year of the conduct at issue. *See Dornell*, 19 F. Supp. 3d at 905 (citing Cal. Gov't Code § 12960(d)).

### b. Plaintiff's Questionnaire qualifies as a timely-filed charge for purposes of Title VII, and the Court assumes *arguendo* that it is sufficient for purposes of FEHA exhaustion.

Plaintiff represented in her Charge that the latest date discrimination took place was May 8, 2012. As such, she would have been required to file a charge by March 4, 2013 under Title VII

1  (*i.e.*, within 300 days), and by May 8, 2013 under FEHA (*i.e.*, within one year).  Plaintiff

2  submitted her Questionnaire on December 12, 2012, and subsequently dual-filed her Charge with

3  the EEOC and DFEH on July 29, 2013.

4        At first glance, Plaintiff's Charge appears to be untimely because she filed it on July 29,

5  2013, well after the EEOC and DFEH deadlines.  At least with respect to Plaintiff's Title VII

6  claim, however, the Court may consider her Charge timely if the preceding Questionnaire (1) was

7  filed within the relevant 300-day period, and (2) provided an allegation, the name of the charged

8  party, and can be "reasonably construed as a request for the agency to take remedial action."  *See*

9  *Kennedy*, 2017 WL 4680079, at *2.  Plaintiff's Questionnaire meets those requirements: in

10  addition to naming Fleming, it enumerated allegations related to her sex and age discrimination

11  claims.  *See* Questionnaire at 2.  Moreover, Plaintiff checked "Box 2," which indicated her desire

12  to file a charge.  *See id.* at 4.  Importantly, Plaintiff submitted her Questionnaire on December 12,

13  2012, within 300 days of the last date discrimination took place.  For these reasons, the Court

14  finds (and neither party disputes) that Plaintiff's Questionnaire qualifies as a charge for purposes

15  of her Title VII claim, and concludes that the charge was timely filed for purposes of exhaustion.[7]

16        With respect to Plaintiff's FEHA claim, it is not so clear-cut.  Plaintiff filed her Charge

17  outside of the one-year limitations period for FEHA claims, rendering the claim untimely on its

18  face.  *See* Cal. Gov't Code § 12960(d).  Despite the Court's order directing the parties to provide

19  supplemental briefing on the question of "whether Plaintiff's charge was timely filed with the

20  EEOC *and DFEH*," *see* Dkt. No 80 at 2 (emphasis added), Plaintiff failed to address the timeliness

21  of her FEHA claims in her supplemental brief.  Defendant, for its part, at least addressed the issue,

22  but the authority it cites is less than definitive.  Specifically, Defendant cites *Kennedy* for the

23  proposition that "[a]n Intake Questionnaire filed with the EEOC will satisfy the timely filing

24  requirement for both Title VII and FEHA."  Dkt. No. 83 at 1 (citing *Kennedy*, 2017 WL 4680079,

25  at *2-4).  But the plaintiff in *Kennedy* did not bring a claim under FEHA, and that case is only

26  persuasive authority in any event.  Moreover, the district court in that case did not expressly

27

28     [7] In its supplemental brief on this issue, Defendant agrees that Plaintiff's Charge was timely filed.
   *See* Dkt. No. 83 at 1.

14

address the issue of whether an intake questionnaire—which can qualify as a charge for purposes of Title VII exhaustion—could similarly qualify as a charge for FEHA purposes. Rather, it simply assumed that it could without conducting any further legal analysis. *See Kennedy*, 2017 WL 4680079, at \*4 ("As a result, when Kennedy filed his Questionnaire with the EEOC, he effectively filed it simultaneously with the DFEH, and this triggered the 300-day charge period.").

The Court need not decide as a matter of law whether Plaintiff's FEHA claim is timely in this context: as discussed below, the claim would fail on summary judgment even if it were. Accordingly, the Court finds that Plaintiff timely filed her Charge with respect to her Title VII claim, and assumes (without deciding) that Plaintiff timely filed her Charge with respect to her claim under FEHA.

> **2.     Plaintiff's sexual harassment claims are not reasonably related to the allegations in her Charge, precluding her from meeting the exhaustion requirement.**

Defendant's main argument with respect to Plaintiff's failure to exhaust is premised on the contention that "her sexual harassment claims are not like or reasonably related to the sex and age discrimination allegations set forth in her administrative charge documents." *See* Mot. at 11. Plaintiff responds that "[c]laims of discrimination under the FEHA or Title VII encompass claims of sexual harassment," and "[a]s such, any investigation into whether [Plaintiff] was subject to sex discrimination while employed by the UC could reasonably be expected to grow into whether [she] was subjected to sexual harassment during the same period." Opp. at 7.

> **a.     A claim under Title VII or FEHA brought in federal court must be "reasonably related" to the allegations set forth in the administrative charge.**

A plaintiff generally may not bring a civil action under Title VII for claims not included in the preceding EEOC charge. *See Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (citation and internal quotation marks omitted). However, a court still has subject matter jurisdiction "over all allegations of discrimination that either fell within the scope of the EEOC's *actual investigation* or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." *B.K.B.*, 376 F.3d at 1100 (citation and internal punctuation omitted) (original emphasis). Courts "consider a plaintiff's civil claims to be reasonably related to

15

allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *Freeman*, 291 F.3d at 636 (quoting *B.K.B.*, 276 F.3d at 1100) (brackets omitted). To determine whether a claim within a charge is exhausted, courts "consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Id.* (citation omitted). At bottom, "[t]he crucial element of a charge of discrimination is the factual statement contained therein." *Id.* (citation omitted); *see also id.* at 637 ("[T]he inquiry into whether a claim has been sufficiently exhausted must focus on the factual allegations made in the charge itself, describing the discriminatory conduct about which a plaintiff is grieving. Only by engaging in such an inquiry will the actual focus of the administrative charge and the scope of the claims exhausted, be revealed."). Where a plaintiff asserts claims of discrimination under both Title VII and FEHA, courts "need only assess [their] claim[s] under federal law because Title VII and FEHA operate under the same guiding principles." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (citing California law).

*Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472 (9th Cir. 1989), provides an illustration of these principles. There, the plaintiff filed a charge with the EEOC alleging "that she was sexually harassed by other employees and denied training and relocation because she was a black woman." *Green*, 883 F.2d at 1474. Later, in her federal complaint, the plaintiff further alleged that her employer's discrimination continued through her formal discharge and afterward "in the form of denied medical leave and benefits to which she was entitled, as well as poor recommendations to other employers." *Id.* at 1475. The court found that the plaintiff failed to exhaust the latter claims, because an investigation of the sex and gender discrimination and sexual harassment "which occurred while she was still working would not encompass her subsequent claims that she was denied medical leave and benefits and ultimately discharged because of her race and sex." *Id.* at 1476.

*Freeman* provides another example. There, the plaintiff was an African-American male teacher who filed a charge with the EEOC alleging racial and sexual discrimination only "in the

context of an election for the Faculty Advisory Council." 291 F.3d at 634. His federal complaint, in contrast, alleged discrimination in a number of other contexts beyond the election. He alleged, for example, that the school required him to teach more students than "other, non-African-American teachers," and that the school retaliated against him when he objected. *See id.* at 635 n.4. The district court granted summary judgment, finding that "[n]one of the allegations in the [plaintiff's complaint] involve the . . . election, which was the sole subject of the EEOC charge." *Id.* at 635. Noting that "[t]he rule of liberal construction does not suggest that a plaintiff sufficiently exhausts his administrative remedies under Title VII by merely mentioning the word 'discrimination' in his or her EEOC administrative charge," the Ninth Circuit agreed. *See id.* at 637. Comparing the plaintiff's charge to his complaint, it found that the "allegations[] which surfaced for the first time in [plaintiff's complaint] clearly would not have been necessary to, or addressed in, the scope of an investigation into the conduct of the . . . elections." *See id.* Nor would anything in the plaintiff's charge "have indicated that an investigation should focus on anything more than the allegations of discrimination by those particular individuals involved in the conduct of the . . . election." *Id.*

> **b.** **Plaintiff's Charge makes no mention of the sexual harassment she alleges in the operative complaint.**

The Court finds that Plaintiff's sexual harassment claims neither fell within the scope of her Charge nor could have reasonably been expected to grow out of the Charge. As made clear by the factual statement in Plaintiff's Charge, her claims of sex and age discrimination are based on two incidents. First, Plaintiff alleges that while she was demoted "because there was a complaint about sexual harassment against [her]," there were "[o]ther male and younger employees [who] did not suffer the same actions as [she] did." Second, Plaintiff alleges that while she was terminated after Defendant "provided a newspaper reporter with private information" that caused colleagues to "complain" about her, "[o]ther male and younger employees did not suffer the same actions as [she] did." She further alleges "discrimination based on [her] gender and age" based on Defendant's failure to investigate her whistleblower complaint, its release of her personal information, and its failure to follow grievance procedures. Plaintiff's FAC, in contrast, alleges

sexual harassment under Title VII on the basis of the following conduct:

> Pierotti was subjected to numerous unwelcome advances by Fleming, her immediate supervisor and boss, including but not limited to his conduct on business trips with Pierotti where he grabbed her breasts and/or made his way into her hotel rooms, and his conduct on a nearly day-to-day basis throughout Pierotti's employment with the UC, when he would routinely make sexual comments toward Pierotti and call her late at night. This continued pattern of ongoing harassment was clearly based upon sex and affected Pierotti's conditions and privileges of employment.

FAC ¶ 86; *see also id.* ¶ 97 (alleging sexual harassment under FEHA based on the same conduct). The plain language of the factual statement within the Charge and the allegations within the FAC make clear that the latter neither "fell within the scope" of the Charge, nor could have "reasonably be[en] expected" to grow out of it. *See B.K.B.*, 376 F.3d at 1100. The only mention of sexual harassment in Plaintiff's Charge is her mention of the sexual harassment complaint against *her.* There is no reading in which the claims in the FAC are "reasonably related" to the theory set forth in her original charge. *See Freeman*, 291 F.3d at 636; *see also id.* (naming the "alleged basis of the discrimination" as one of the factors courts use to determine whether a claim in federal court was exhausted).[8]

Plaintiff's argument to the contrary contravenes black-letter law. She contends that because sex discrimination claims "encompass" claims of sexual harassment as a matter of law, "any investigation into whether [she] was subject to sex discrimination while employed by the UC could reasonably be expected to grow into whether [she] was subjected to sexual harassment during the same period." *See* Opp. at 7. While it may be true that sexual harassment claims can be described generically as a subset of sex discrimination claims, that is irrelevant in this case, as Plaintiff fails to account for the Ninth Circuit's instruction that the *factual* statement within the Charge is the focus of the analysis. *See Freeman*, 291 F.3d at 636. Moreover, Plaintiff provides no authority for her assertion that "[b]ecause . . . sexual harassment is included in the definition of

---

[8] The Court notes that Plaintiff's Questionnaire also provides no factual basis to conclude that she intended to assert claims of sexual harassment. As in her Charge, she represents that the basis for her claims was sex and age discrimination, and that she believed the conduct at issue was discriminatory because "[e]mployees of different gender and younger in similar situations have not suffered such actions." Questionnaire at 2.

18

'sex discrimination' under the FEHA, Title VII, and the UC's own sex discrimination policies, [her] sexual harassment claims should be considered timely even if they were not explicitly mentioned in the text of [her] initial Charge." *See* Opp. at 8. Plaintiff's argument is inconsistent with the principle that "merely mentioning" a *type* of claim in an administrative charge is insufficient to exhaust unmentioned claims that are factually distinct. *See Freeman*, 291 F.3d at 637.

Accordingly, Plaintiff's Charge did not encompass her claims of sexual harassment; those claims are unexhausted; and this Court lacks subject matter jurisdiction unless some exception applies. *See B.K.B.*, 276 F.3d at 1099.

### 3. The doctrine of equitable excuse does not apply to preserve Plaintiff's unexhausted claims.

In their initial briefing, the parties appeared to be arguing past each other with regard to how equitable doctrines applied (or did not apply) to Plaintiff's sexual harassment claims. Defendant contended that equitable tolling did not preserve Plaintiff's sexual harassment claims because she had failed to timely file an administrative charge including those allegations. *See* Mot. at 12. Plaintiff countered that "even assuming that [her] sexual harassment claims could not be reasonably expected to grow out of the initially filed charge and are not reasonably related to the allegations contained in the charge, the doctrine of equitable tolling still serves to preserve [her] claims." *See* Opp. at 9. As the Court noted at the hearing on this motion, however, equitable tolling is inapplicable in these circumstances, where Plaintiff seeks relief not for an untimely filing, but for failing altogether to include certain allegations in her administrative charge. Instead, the applicable doctrine is equitable excuse. The parties took the Court's request for supplemental briefing, *see* Dkt. No. 80, as an opportunity to argue the issue.[9]

#### a. Equitable excuse preserves Title VII and FEHA claims for which the plaintiff has not met exhaustion requirements due to agency error.

The equitable remedy required to preserve Plaintiff's sexual harassment claims in this case

---

[9] The parties also attempted to submit additional evidence, which the Court did not request and therefore does not consider. *See* Civ. L.R. 7-3(d).

is "much broader" than equitable tolling.  *See Rodriguez v. Airborne Express*, 265 F.3d 880, 901 n.11 (9th Cir. 2001).  In order for these claims to proceed, the Court would need to "excuse [her] entirely from filing an administrative charge."  *See id.*  This is the doctrine of equitable excuse, which "is conceptually distinct from the doctrine of equitable tolling."  *See id.*  It applies where "the plaintiff's failure to comply [with exhaustion requirements] can be attributed to the administrative agency . . . charged with processing [her] complaint."  *See id.* at 900 (citation omitted).  Application of the doctrine "requires balancing the equities in the particular case."  *Id.* at 901 (citations omitted).  While there is "no formula" dictating how to carry out such balancing,

> [t]he equities favor a discrimination plaintiff who (1) diligently pursued his claim; (2) was misinformed or misled by the administrative agency responsible for processing his charge; (3) relied in fact on the misinformation or misrepresentations of that agency, causing him to fail to exhaust his administrative remedies; and (4) was acting pro se at the time.

*Id.* at 902 (citations omitted).[10]

The cases from which the *Rodriguez* court drew the concept of equitable excuse are instructive.  In *Denney v. University City Studios, Inc.*, a plaintiff proceeding pro se sought to file a charge with the DFEH through the EEOC and completed an EEOC intake questionnaire, alleging age discrimination, disability discrimination, and retaliation.  10 Cal. App. 4th 1226, 1234 (1992), *abrogated on other grounds by City of Moorpark v. Superior Court*, 18 Cal. 4th 1143 (1998).  When the EEOC presented the plaintiff with a charge raising only the age discrimination claim, "he complained, but was told that this charge was sufficient to commence the administrative process."  *Id.*  The plaintiff "relied on this posture so long as he was" pro se, but once he obtained an attorney, "promptly" heeded the attorney's advice and amended the administrative charges to reflect all three claims.  *Id.*  Rejecting the defendant's contention that the

---

[10] The court in *Rodriguez* did not expressly state that a plaintiff bears the burden of proving her entitlement to equitable excuse on summary judgment, but suggested as much.  *See* 265 F.3d at 901-02 (considering facts set forth in the plaintiff's affidavit in equitable excuse analysis).  This would be consistent with the rule that plaintiffs bear the burden of proof with respect to the applicability of analogous equitable doctrines, such as equitable tolling and equitable estoppel.  *See Fanucci v. Allstate Ins. Co.*, 638 F. Supp. 2d 1125, 1137 (N.D. Cal. 2009) (equitable tolling) (citing *Judelson v. Am. Metal Bearing Co.*, 89 Cal. App. 2d 256, 266 (1948)); *Utterkar v. Ebix, Inc.*, No. 14-CV-02250-LHK, 2015 WL 1254768, at *4 (N.D. Cal. Mar. 18, 2015) (equitable estoppel) (citing *Honig v. S.F. Planning Dep't*, 127 Cal. App. 4th 520, 529 (2005)).

20

plaintiff failed to exhaust his administrative remedies with respect to his disability discrimination and retaliation claims, the court held "neither equity nor the purposes of the exhaustion requirement would support or permit barring [the plaintiff's claims]." *Id.*

The other case upon which the *Rodriguez* court relied involved an EEOC charge. There, the plaintiff sought to amend his original charge to add a claim of constructive discharge. *See Albano v. Schering-Plough Corp.*, 912 F.2d 384, 386 (9th Cir. 1990). "[T]he EEOC did not allow him to do so and [the plaintiff] was assured that his original charge . . . encompassed this claim. The EEOC then told [the plaintiff] it was not going to pursue his charge and that it was too late to file suit." *Id.* Finding that the "EEOC's failure to follow its own rules" "should not bar the claimant from bringing a civil suit," *id.* at 387, the court concluded that equitable considerations supported a finding that the plaintiff's failure to exhaust did not bar his suit, *see id.* at 388.

### b. Plaintiff proffers no evidence that her failure to exhaust was attributable to error by the EEOC.

Here, Defendant contends (in asserting its equitable *tolling* argument) that "[t]here is no evidence that the EEOC or the DFEH provided misinformation or misleading statements which caused Plaintiff to omit her sexual harassment allegations or that Plaintiff relied on some misinformation or misrepresentation provided by either of the administrative agencies." Mot. at 12-13. In response, Plaintiff provides a declaration in which she states:

> While the EEOC investigation was still ongoing in 2013, I called the EEOC to ask if I had to file a new claim with them to cover any additional actions that had occurred since the time I initiated my claims in December 2012, including sexual harassment. When I called the EEOC, I had already disclosed during a deposition that I had suffered from pervasive sexual harassment during my employment and was no longer hiding that. *The EEOC representative told me that I did not have to do anything because any new actions that occurred since then, including sexual harassment, were covered by my original filing.* At the time, I understood sexual harassment to be encompassed by sex discrimination under the law and the UC's own nondiscrimination policies that I stated above.

Pierotti Decl. ¶ 24 (emphasis added). This single paragraph—the very last in her declaration—appears to be Plaintiff's sole basis for asserting her entitlement to equitable excuse. But, while it might imply agency error on the surface, a closer look reveals that Plaintiff's assertion is actually

immaterial. Plaintiff states that she sought advice regarding "any additional actions that had

occurred *since the time I initiated my claims in December 2012*"— *not* for additional claims (*i.e.*,

sexual harassment claims) that took place during the course of her employment while she worked

for Fleming. In her Charge, Plaintiff represented that the latest date discrimination took place was

the date of her termination: May 8, 2012. In the FAC, Plaintiff alleges that "Fleming began to

engage in pervasive, offensive, and unwanted sexual conduct toward [her] after his promotion to

Vice Chancellor in 2009 and continued with his offensive and wrongful conduct until Pierotti's

termination on May 8, 2012." FAC ¶ 7. In other words, the declaration evidence proffered by

Plaintiff does not show that, but for her reliance on a mistaken EEOC staffer, she would have

included sexual harassment claims based on Fleming's conduct. Rather, it suggests only that

Plaintiff wished to "cover any additional actions that had occurred since the time I initiated my

claims in December 2012," which was long after her termination and the conduct at issue in this

case was over. *See* Pierotti Decl. ¶ 24.[11]

Plaintiff has thus failed to satisfy her burden to show that her failure to allege sexual

harassment in her Charge should be equitably excused. Based on the undisputed facts, she is

precluded from doing so as a matter of law. Accordingly, the Court grants summary judgment as

---

[11] As noted above, the Court did not consider the unsolicited declaration accompanying Plaintiff's supplemental brief. *See* Dkt. No. 84-1 (Supplemental Declaration of Diane Pierotti or "Supp. Decl."). Still, it causes the Court serious concern that the Supplemental Declaration is so different from the one accompanying Plaintiff's opposition, in which she declared under oath that she "called the EEOC to ask if [she] had to file a new claim with them to cover any additional actions that had occurred since the time [she] initiated [her] claims in December 2012." Pierotti Decl. ¶ 24. As explained above, because Plaintiff specified that her request was directed to additional actions that had occurred since December 2012, the doctrine of equitable excuse does not preserve her sexual harassment claims. Inexplicably, Plaintiff's supplemental declaration states the following: "Later in 2013 . . . I called the EEOC to ask if filing a new claim was necessary *to cover any additional claims not included in my charge*. I was told that would not be necessary and that all I needed to do was provide the additional information regarding the UC's actions to the EEOC investigator once was I contacted by one." Supp. Decl. ¶ 9 (emphasis added). It is well-settled that a plaintiff cannot create a triable issue of fact simply by contradicting her own evidence. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."). Nor can a plaintiff essentially reverse her own prior sworn statement (without even acknowledging that she is doing so) in order to evade summary judgment. *See Ochoa v. McDonald's Corp.*, No. 14-cv-02098-JD, 2015 WL 13079032, at *1 (N.D. Cal. June 2, 2015) ("[A] deponent can change her testimony so long as she provides a statement showing that the changes are legitimate and not 'purposeful rewrites tailored to manufacture an issue of material fact' to avoid a pending summary judgment motion.") (citation omitted).

to Plaintiff's sexual harassment claims, and need not reach Defendant's statute of limitation argument.

### C. Plaintiff's Request to Stay Defendant's Motion Pending Discovery and Her Motion to Augment the Record Are Denied.

Plaintiff alternatively requests a stay of this motion pending discovery, contending that "Defendant has filed its [motion] before the parties have had the 'full opportunity to conduct discovery' in this matter." Opp. at 15. Counsel for Plaintiff details in the opposition and his accompanying declaration several examples of why the discovery he has obtained, thus far, is purportedly insufficient. *See* Opp. at 15-16; Dkt. No. 66-2 (Declaration of Yosef Peretz, or "Peretz Decl.") ¶¶ 4, 6-8. In support of her request for this Court to defer deciding the motion, Plaintiff cites Federal Rule of Civil Procedure 56(d).

At summary judgment, where "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," a court may (as relevant here) "defer considering the motion or deny it." Fed. R. Civ. P. 56(d)(1). "To prevail on a request for additional discovery under Rule 56(d), a party must show that '(1) it has set forth in an affidavit the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment.'" *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 619-20 (9th Cir. 2017) (quoting *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008)). Far from showing that she is entitled to relief under Rule 56(d), Plaintiff fails even to cite the standard, instead making the conclusory assertion that given the issues she has had obtaining certain discovery, she "could hardly be said to have been afforded a 'full opportunity to conduct discovery' that would justify the bringing of a [summary judgment] motion under [Rule 56] so early in [the] proceedings." *See* Opp. at 16. Plaintiff is thus not entitled to relief under Rule 56(d).

Last, on March 19, 2018—three days before the hearing on this motion—Plaintiff submitted more than 30 pages of additional evidence in a "Motion to Augment Record." *See* Dkt. No. 78. The additional evidence Plaintiff seeks to proffer is to "properly advance her equitable

23

tolling argument."  *See id.* at 2; *see also id.* at 5 ("All of the above evidence . . . is highly relevant to the Court's determination of whether the doctrine of equitable tolling should apply to Plaintiff's sexual harassment claims." ).  As explained above, however, the doctrine of equitable tolling does not apply to Plaintiff's sexual harassment claims.  It is instead equitable *excuse* that is the operative doctrine with respect to those claims.  Because the latter doctrine applies only where a plaintiff's failure to comply with exhaustion requirements "can be attributed to the administrative agency," *see Rodriguez*, 265 F.3d at 900, and because the additional evidence proffered by Plaintiff is not related to the question of agency error, *see* Dkt. No. 78 at 4-5, the motion is denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion for partial summary judgment and **DENIES** Plaintiff's administrative motion to augment the record.

**IT IS SO ORDERED.**

Dated:  5/11/18

HAYWOOD S. GILLIAM, JR.
United States District Judge